UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY C. SANDERS,<br>　　　　Petitioner,<br>　　v.<br>WARDEN DANNY SAMUEL,<br>　　　　Respondent. | Case No. 20-cv-06055-JST<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |

Petitioner, a California state prisoner currently housed at California Men's Colony,[1] has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the validity of his state court conviction. ECF No. 1. Respondent has filed an answer to the petition. ECF Nos. 18-19 ("Answer"). Petitioner has not filed a traverse, and the deadline to do has passed. For the reasons set forth below, the petition is DENIED.

## I.　PROCEDURAL HISTORY

In 2015, a Contra Costa County jury convicted Petitioner of one count of assault with a firearm (Cal. Penal Code § 245(a)(2)) and one count of discharging a firearm at an occupied motor vehicle (Cal. Penal Code § 246), both arising out of a May 8, 2013 incident (counts ten and eleven); and three counts of unlawful firearm possession (Cal. Penal Code § 29800(a)(1)) with respect to incidents taking place on April 10, 2013 (count eight), May 8, 2013 (count twelve), and May 15, 2013 (count thirteen), with an enhancement for personal use of a firearm (Cal. Penal Code § 12022.5(a)) during the May 8, 2013 incident (count ten). The trial court found Petitioner

---

[1] In accordance with Habeas Rule 2(a) and Rule 25(d)(1) of the Federal Rules of Civil Procedure, the Clerk of the Court is directed to substitute Warden Danny Samuel as respondent because he is Petitioner's current custodian.

had one prior prison term (Cal. Penal Code § 667.5(b)).  Answer, Exs. A-B ("CT") 262-68, 578-94; Answer, Exs. C-D ("RT") 1261-62.  In 2016, the Contra Costa County Superior Court sentenced Petitioner to thirteen years in prison.  CT 618-22; RT 1277-83.  On May 10, 2019, the California Court of Appeal affirmed Petitioner's conviction and judgment on direct review.  *People v. Sanders*, C No. A147611, 2019 WL 2082396 (Cal. Ct. App. May 10, 2019).  On July 25, 2019, the California Supreme Court denied review on July 24, 2019.  Answer, Ex. G.

Petitioner does not report pursuing collateral review in state court.

On or about August 28, 2020, Petitioner commenced this habeas action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  That same day, the Court informed Petitioner that this action was deficient because he had not signed the petition as required by the Federal Rules of Civil Procedure.  ECF No. 2.  Plaintiff was instructed to submit a signed petition on the proper form or face dismissal of this action.  ECF No. 2.  On October 23, 2020, the Court dismissed this action without prejudice for failure to submit a signed petition, and entered judgment against Petitioner.  ECF Nos. 8, 9.

On March 14, 2023, the Court reopened this action pursuant to Petitioner's filing a signed petition.  ECF No. 14.  The Court screened the petition and found that it stated the following cognizable claims: (1) Petitioner's rights to due process and a fair trial were violated when the district attorney during closing told the jury that it could convict Petitioner of assaulting Lawrence Westbrook with a firearm on May 8, 2013, an offense with which Petitioner had not been charged; (2) Petitioner's rights to due process and a fair trial were violated when the trial court refused to amend the verdict form to reflect that Jashmir Pal was the alleged victim of the May 8, 2013 assault and when the trial court failed to give a unanimity instruction; (3) Petitioner's rights to due process and a fair trial were violated when the trial court failed to instruct the jury that to find Petitioner guilty of violating Cal. Penal Code § 246, the jury must find that the vehicle into which Petitioner shot was occupied.  ECF No. 14.

**II.    FACTUAL BACKGROUND**

The following factual and procedural background is taken from the California Court of

Appeal's opinion:[2]

> Defendant Troy Ceban Sanders was tried before a jury on an amended information charging 13 offenses, including three counts of attempted murder occurring on three different occasions. He was found not guilty of the more serious offenses but convicted of five offenses resulting in a 13-year prison sentence.
>
> . . .
>
> **Factual and Procedural Background**
>
> The offenses for which defendant was convicted are the unlawful possession of a firearm (Pen. Code, [FN 1] § 29800, subd. (a)(1)) occurring on April 10, 2013; assault of Jashmir Pal with a firearm (§ 245, subd. (a)(2)), discharge of a firearm at an occupied motor vehicle (§ 246) and unlawful possession of a firearm (§ 29800, subd. (a)(1)) all occurring on May 8, 2013; and a third count of possession of a firearm (§ 29800, subd. (a)(1)) occurring on May 15, 2013. The jury also found true the allegation that defendant personally used a firearm (§ 12022.5, subd. (a)) in connection with the May 8 assault. The information also alleged and the court found true that defendant had served a prior prison sentence (§ 667.5, subd. (b)).
>
>> FN 1: All statutory references are to the Penal Code unless otherwise noted.
>
> The following evidence was presented at trial: [FN 2]
>
>> FN 2: We limit our recitation of the evidence to that relevant to the charges for which defendant was convicted.
>
> Defendant and Jashmir Pal lived together for five years until their relationship ended in October 2012. After that relationship ended, Pal began dating then later married Lawrence Westbrook. Prior to dating Pal, defendant had a relationship with Westbrook's ex-wife, with whom both defendant and Westbrook have children. Westbrook was in prison on assault charges from 2001 until August 2012. Defendant testified that Westbrook did not like defendant having a relationship with Westbrook's children and that Westbrook had repeatedly threatened that defendant "would be dealt with" when he was released from prison.
>
> ***The April 10 Incident***
>
> Just after 7:00 p.m. on April 10, 2013, Pal's vehicle was stopped for a red light at an intersection in Pittsburg when she noticed a black Firebird stopped ahead of her. While Pal was still stopped, defendant got out of the Firebird and shot at her. Pal ducked, put her vehicle in

---

[2] The Court has independently reviewed the record as required by AEDPA. *Nasby v. Daniel*, 853 F.3d 1049, 1052–54 (9th Cir. 2017). Based on the Court's independent review, the Court finds that it can reasonably conclude that the state court's summary of the prosecution case and the defense case is supported by the record, unless otherwise indicated in this order.

reverse, and "stomped" on the gas. The vehicle hit the center island, rolled over three times, and came to rest upside down. Pal got out of the car and ran.

Defendant testified that he bought two firearms in March 2013 to protect himself from Westbrook, who had been threatening him. He testified that when Pal's vehicle pulled up behind his car, he saw Westbrook stick a gun outside the passenger side window and fire two shots at his car. In response, he shot back approximately 12 to 14 times in self-defense.

Police recovered 14 nine-millimeter shell casings at the intersection. They also found eleven .40-caliber shell casings farther back from the intersection, and an another .40-caliber shell casing approximately four feet from the passenger side of Pal's overturned vehicle.

***The May 8 Incident***

On the afternoon of May 8, 2013, Pal testified that she alone was sitting in the passenger seat of a red pickup truck parked outside the home of Westbrook's cousin in Pittsburg. Westbrook and several other people were socializing outside the house. Defendant drove past the house in a brown Suburban waving a black handgun and smirking at her. As he continued to drive down the street, he turned in her direction and shot at her. Pal dropped to the floorboard for cover.

Defendant testified that he was driving to a friend's house when he came upon the red pick-up truck. He did not see Pal but saw Westbrook standing by the open door. According to defendant, Westbrook jumped into the truck and fired three shots at him. Defendant returned fire on the truck while attempting to drive away.

Police officers recovered six .40-caliber shell casings in the center of the street that were determined to have been expelled from a firearm recovered from defendant's vehicle a week later.

***The May 15 Incident***

At 9:15 p.m. on May 15, 2013, a Contra Costa County sheriff's deputy initiated a traffic stop of defendant's car. Defendant consented to a search of his vehicle, during which the deputy found a black, semiautomatic firearm on the floorboard near the driver's seat.

Defendant was sentenced to a term of 13 years in prison. The court imposed the midterm of three years on the May 8 assault conviction plus 10 years for the firearm enhancement. Concurrent terms were imposed on the remaining counts. Defendant timely filed a notice of appeal.

*Sanders*, 2019 WL 2082396, at *1-*2.

/ / /

/ / /

/ / /

4

## III. DISCUSSION

### A. Standard of Review

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state courts' adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Additionally, habeas relief is warranted only if the constitutional error at issue "had substantial and injurious effect or influence in determining the jury's verdict." *Penry v. Johnson*, 532 U.S. 782, 795 (2001).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Williams*, 529 U.S. at 405–06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the

5

United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991);[3] *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005). Petitioner raised the claims in this federal habeas action in the state court on direct appeal and in his petition for review. Answer, Exs. E, G. The state appellate court denied the claims in a reasoned decision, *Sanders*, 2019 WL 2082396 (Cal. Ct. App. May 10, 2019), and the state supreme court summarily denied the claims, Answer, Ex. G. The Court therefore reviews the state appellate court's reasoned decision when considering Petitioner's claims on federal habeas review.

### B. Petitioner's Claims

#### 1. Claim Nos. 1 and 2: Statement During Closing Argument; and Error in Verdict Form and Failure to Give Unanimity Instruction

In his first claim for habeas relief, Petitioner argues that his right to due process and a fair trial were violated when the district attorney told the jury during his closing argument that it could convict Petitioner of assaulting Lawrence Westbrook with a firearm on May 8, 2013, which is not an offense with which Petitioner had been charged. ECF No. 1 at 45-52 (unsigned petition); ECF No. 12 at 48-55 (signed petition). In his second claim for habeas relief, Petitioner argues that was denied his right to a fair trial and due process of law the trial court refused to amend the verdict form to reflect that Jashmir Pal was the alleged victim of the May 8, 2013 assault and when the

---

[3] Although *Ylst* was a procedural default case, the "look through" rule announced there has been extended beyond the context of procedural default. *Barker v. Fleming*, 423 F.3d 1085, 1091 n.3 (9th Cir. 2005). The look through rule continues as the Ninth Circuit held that "it is a common practice of the federal courts to examine the last reasoned state decision to determine whether a state-court decision is 'contrary to' or 'an unreasonable application of' clearly established federal law" and "it [is] unlikely that the Supreme Court intended to disrupt this practice without making its intention clear." *Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir.), *amended*, 733 F.3d 794 (9th Cir. 2013).

trial court failed to give an unanimity instruction. ECF No. 1 at 52-59 (unsigned petition); ECF No. 12 at 55-62 (signed petition). Following the state court's lead, the Court considers these claims together.

The state appellate court denied these claims as follows:

> ***Assault with a Firearm (May 8)***
>
> Defendant asserts three related grounds for reversal of his assault conviction: the prosecutor assertedly violated defendant's right to due process and a fair trial when he told the jury that it could convict defendant of assaulting either Westbrook or Pal, since he was charged with assaulting only Pal, and the trial court erred in refusing to amend the verdict form to state that Pal was the alleged victim of the assault and in failing to give a unanimity instruction as to the victim of the assault. We find no error.
>
> At the start of the trial, the jury was read the charges against defendant, including count ten which charged defendant with committing assault with a firearm on May 8 upon the person of Jashmir Pal. [FN 3] The jury was instructed that to find defendant guilty of this charge the prosecution was required to prove "One, the defendant did an act with a firearm that by its nature would directly and probably result in the application of force to a person. Two, the defendant did that act willfully. Three, when the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone. And four, when the defendant acted, he had the present ability to apply force with a firearm to a person. And five, the defendant did not act in self-defense." The instruction further advised that the prosecution was "not required to prove that the defendant actually intended to use force against someone when he acted." The verdict form did not identify a victim by name. The verdict form read, "We, the jury in this case, find defendant . . . guilty of (ASSAULT WITH A FIREARM), a violation of Penal Code section 245(a)(2), a felony, on or about May 8, 2013, as set forth in Count Ten of the Information."
>
>> FN 3: Pal was named as the victim of all offenses for which a victim was named in the information. Westbrook was not identified as a victim in any charge.
>
> In closing argument, the prosecutor read the elements of the crime of assault with a firearm, then argued, "But what does it look like in real life? If you go through those instructions, what's not required is that the defendant actually strike a human being . . . . [¶] And that's because when we talk about somebody, the criminality that's associated with assault with a firearm, that's [when] you have two guys, one of whom rolls by like you have here, pulls the trigger, boom-boom-boom-boom-boom, committing a drive-by shooting just like defendant did . . . . [¶] . . . Even if nobody is hit, but you have a human being who is in the area and is in such a place where that action could directly and probably result in the application of force to a

7

person, meaning that somebody could be hit with a bullet." The prosecutor explained that Pal was the person who could have been hit by the bullets defendant fired on May 8.

Defense counsel's closing argument focused almost exclusively on the attempted murder charges and did not separately address the assault counts. Counsel argued that, contrary to her testimony, Pal "was never even in the truck on the May 8th incident." He cited the testimony of two neighbors, one who could not tell if it was a man or woman in the truck and the other who told officers he thought it was a man. Counsel argued that defendant had testified he saw Westbrook get in the truck. Then defense counsel argued, "You remember that information that you read, or [was] read to you . . . ? Take a look at that information. Does that information say, trying to kill [Pal] and [Westbrook]? No . . . . Ask for the information . . . . [¶] He was not charged with trying to kill Mr. Westbrook."

In rebuttal, the prosecutor disputed defense counsel's claim that Pal was not in the truck on May 8, citing Pal's testimony and other evidence to the contrary. The prosecutor also pointed out that even if defendant thought he was shooting at Westbrook, Pal was "there too. She's caught in the cross-fire."

At no point did the prosecutor argue to the jury that it could convict defendant under count ten based on finding that he committed an assault on Westbrook. Defendant contends that because the prosecutor argued that the same conduct established both the attempted murder of Pal and the assault with a firearm, and also argued that even if defendant had intended to kill Westbrook he could be found liable for the attempted murder of Pal under the kill zone theory of liability, by implication the prosecutor told the jury it could convict defendant of an assault on Westbrook. Defendant also refers to the prosecutor's arguments that "[b]y virtue of it being attempted murder, by virtue of a bullet getting that close to the woman's head, that's assault with a firearm. The exact same conduct . . . proves up both crimes," and that "[t]he defense is going to say, well, he was trying to kill Lawrence Westbrook . . . . But the upshot of it is no, no, no, no, he was trying to kill Jashmir Pal and Lawrence Westbrook if he was there." Defendant's strained reading of the closing argument is not persuasive. By no stretch of the imagination could the jury have understood these or any other of the prosecutor's statements to mean that it could convict defendant under count ten for assaulting Westbrook rather than for assaulting Pal. Moreover, as indicated above, defendant was explicitly charged in the information read to the jury with assaulting Pal, and there is no disagreement but that the jury was properly instructed on that charge. Although the verdict form did not name Pal, there is no requirement that the verdict form include the name of the victim, and there is no reason to believe the jury was confused as to whom defendant was charged with assaulting. [FN 4] Furthermore, since defendant was charged with assaulting only Pal, and the prosecutor argued only that she was the victim of the assault, there was no need for a unanimity instruction and the court did not err in failing to give one.

> FN 4: Defendant's reference to the prosecutor's argument to the trial judge that it was unnecessary to include Pal's name

8

> in the verdict form does nothing to suggest jury confusion since the argument was not made to the jury.

*Sanders*, 2019 WL 2082396, at *2-*3.

### a. Analysis: Claim No. 1

Petitioner argues that the following statements by the prosecutor during the closing argument cast Westbrook as the intended victim with Jashmir Pal as someone caught in the cross-fire and therefore incorrectly implied to the jury that it could convict Petitioner of count ten – the charge of assault with a firearm on May 8, 2013 – solely based on finding that Petitioner had committed an assault on Westbrook and without having to find that Petitioner had committed an assault on Pal:

- Petitioner "was going by the residence that he knows is associated with somebody who he considers his sworn enemy. Okay. That's a place where he knows he could find, potentially, Lawrence Westbrook or Jashmir Pal." RT 1072.

- "So, in this case, when the defendant talks about pulling by this house and unloading shots as he's passing 1225 Columbia, he's firing where? In the direction of the house, in the direction of the car that he knows is occupied. In a house that, by any stretch of the imagination, likely has people in it in a residential area. What's the defendant's intent? It is to end human life." RT 1077.

- "The defense is going to say, well, he was trying to kill Lawrence Westbrook. But the upshot of it is: no, no, no, he was trying to kill Jashmir Pal and Lawrence Westbrook if he was there. For either of these two shootings, it doesn't change about what he did to [Jashmir Pal.]" RT 1077.

- "So, what's the defendant doing on May 8th? He's going exactly where he knows he can find the people who he wants to kill. He's going exactly to the place where he can find the people who he was dealing with on April 10th." RT 1079.

- " . . . I'll concede, it's entirely a reasonable explanation for the evidence that Lawrence Westbrook was on the scene on April 10 of 2013." RT 1081.

- By April 10, Petitioner "already made his decision long before about how he was going to deal with the Jashmir Westbrook/Lawrence Westbrook problem. It's the only reason you keep two guns in two different cars, is to be ready to show him who's boss." RT 1084.

- "[Jashmir Pal] has one sin under her belt, and it's that she has abysmal taste in men. You live in a big city, you hear that story over and over, and over." RT 1088.

- "[Jashmir Pal] was caught in the cross-fire between two maniacs [Westbrook and Petitioner] . . ." RT 1089.

- "By virtue of it being attempted murder, by virtue of a bullet getting that close to [Jashmir Pal]'s head, that's assault with a firearm. The exact same conduct is proven in both ways – or sorry – proves up both crimes. So just like that, you have attempted murder on – in April, you have attempted murder in May. That same behavior, if

9

> you're guilty of attempted murder for those two crimes, you're also guilty of assault with a firearm for those crimes as well." RT 1096.

- "You have an argument with a guy . . . some guy whom you don't like. Words are exchanged and somebody who you are – you already don't like, but then your response to that beef, which is based upon romantic entanglement, based upon bad history, bad blood between the two of you is: Oh, yeah. Then you go out and you buy two guns." RT 1100.

ECF No. 1 at 44-52.

The state appellate court's rejection of this claim was a reasonable determination of the facts in light of the evidence presented in the state court proceeding. The state court reasonably determined that the record showed that "[a]t no point did the prosecutor argue to the jury that it could convict defendant under count ten based on finding that he committed an assault on Westbrook." *Sanders*, 2019 WL 2082396, at *3.

First, the amended information clearly indicated that this case only involved assault and attempted murder against Jashmir Pal; the amended information did not reference Lawrence Westbrook; and the amended information was read to the jurors. RT 152-53, 155-56; CT 259-66.

Second, in his closing argument, the prosecutor repeatedly stated that the case was about Petitioner shooting at Jashmir Pal. In his opening sentences, the prosecutor stated, "This case is about the defendant's impunity. The impunity to shoot at [Jashmir Pal] three times, to turn city streets into a shooting range, to attack a woman . . . ." RT 1070. When discussing the May 8th shooting, the prosecutor specifies that the intended victim is Jashmir Pal: "Who was he trying to kill on May 8th? We know video evidence tells us there's no question he's trying to kill a human being in the truck. That person is Jashmir Pal, Jashmir Westbrook." RT 1077. In his final sentences, the prosecutor specifically emphasizes that Jashmir Pal was the person in the car on May 8, 2013:

> "And here's why [it's not true that on May 8, 2013, the car was only occupied by Lawrence Westbrook]: May 8th is when the shooting occurs. May 9th is when [Jashmir Pal] is reporting a crime. So, when she's describing the detail in that truck, explain that to me. Somebody explain it. She goes to the police, and in that moment, she has no way of knowing that later on, ballistics evidence is going to confirm the identity of her assailant, just like she's telling the police. She has no way of knowing that video evidence is going to get retried. So, when she's telling Detective Blazer, yeah, I started driving toward, and then I pulled a U-ey and went back. Boy, that's a weird detail for a person who wasn't there to remember.

10

>She was the person in that car.
>
>. . .
>
>The defense is trying to say she wasn't even there. How in God's name does she know every single detail about what happened, unless she was?

RT 1102-04. The prosecutor referenced Lawrence Westbrook being in the car or as Petitioner's potential intended target only to rebut the defense arguments that Petitioner's sole intent was to kill Lawrence Westbrook and that Petitioner lacked intent to kill Jashmir Pal. And the prosecutor's focus in referencing Lawrence Westbrook was to argue that even if Petitioner intended to kill Lawrence Westbrook, the evidence shows that that Petitioner *also* intended to kill Jashmir Pal. Each time the prosecutor referenced Lawrence Westbrook, he also references Jashmir Pal. *See, e.g.*, RT 1077 (". . .the upshot of it is: no, no, no he was trying to kill Jashmir Pal *and Lawrence Westbrook if he was there*." RT 1076 (emphasis added). For either of these two shootings, it doesn't change about what he did to [Jashmir Pal.]") (emphasis added); RT 1079 (arguing that on May 8th, Petitioner was looking for "the people" he wanted to kill, i.e., looking for both Jashmir Pal *and* Lawrence Westbrook); RT 1084 (arguing that by April 10, Petitioner had decided how he wanted to "deal with the Jashmir Westbrook/Lawrence Westbrook problem").

In addition, the state appellate court's rejection of this claim also did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Prosecutorial misconduct is cognizable in federal habeas corpus. A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *see also Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"). Under *Darden*, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness. *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005); *see also Deck v. Jenkins*, 814 F.3d 954, 978 (9th Cir. 2016) (recognizing that *Darden* is the clearly established federal law regarding a

11

prosecutor's improper comments/remarks for AEDPA review purposes). A prosecutorial misconduct claim is decided "'on the merits, examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995); *see Trillo v. Biter*, 769 F.3d 995, 1001 (9th Cir. 2014) ("Our aim is not to punish society for the misdeeds of the prosecutor; rather, our goal is to ensure that the petitioner received a fair trial."). "A court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through a lengthy exhortation will draw that meaning from the plethora of less damaging interpretations." *Williams v. Borg*, 139 F.3d 737, 744 (9th Cir. 1998). Prosecutorial comment must be examined in context. *See id.* at 745 (citing *United States v. Robinson*, 485 U.S. 25, 33 (1988)). With respect to the first inquiry under *Darden*, when the challenged statements are examined in context as required by Supreme Court precedent, they do not imply that the jury could find Petitioner guilty of count 10 if it found Lawrence Westbrook to be the victim of the act in count 10. Rather, as discussed *supra*, the statements argue that even if Petitioner intended to harm Lawrence Westbrook, he also intended to harm Jashmir Pal. Because the remarks were not improper, the Court need not proceed to the second inquiry under *Darden*.

Habeas relief is therefore denied with respect to this claim.

    **b.**  **Analysis: Claim No. 2**

Petitioner argues that he was deprived of due process and his right to a fair trial when (1) the trial court refused to amend the verdict form to specify that Jashmir Pal was the victim in Count 10 in response to the jury's questions during deliberations, and (2) the trial court failed to instruct the jury that it was required to unanimously agree as to who the victim of the assault was. The state court rejected these claims on the following grounds. There is no requirement that the verdict form include the name of the victim; there was no reason to believe that the jury was confused as to whom Petitioner was charged with assaulting; and there was no argument made by either side that anyone other than Jashmir Pal was the victim of the assaults.

The state appellate court's denial of the verdict form claim was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the

12

Supreme Court of the United States. Petitioner has not cited, and the Court has been unable to locate, any United States Supreme Court authority holding that a verdict form which fails to specify the name of the victim violates a defendant's federal constitutional rights. Absent Supreme Court precedent squarely addressing this issue, the state appellate court's rejection of Petitioner's verdict error claim cannot be contrary to, or an unreasonable application of, clearly established federal law. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, . . . it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law. Under the explicit terms of § 2254(d)(1), therefore, relief is unauthorized." (citation and internal quotation marks omitted; brackets in original)); *Stenson v. Lambert*, 504 F.3d 873, 881 (9th Cir. 2007) ("Where the Supreme Court has not addressed an issue in its holding, a state court adjudication of the issue not addressed by the Supreme Court cannot be contrary to, or an unreasonable application of, clearly established federal law.").

The state appellate court's denial of the instructional error claim also was not contrary to clearly established federal law. A state trial court's refusal to give an instruction states a cognizable federal habeas claim only if the error so infects the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment. *See Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988). The omission of an instruction is less likely to be prejudicial than a misstatement of the law. *See Walker v. Endell*, 850 F.2d at 475-76 (citing *Henderson v. Kibbe*, 431 U.S. at 155). Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "'especially heavy burden.'" *Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)). Here, the failure to instruct the jury that it was required to unanimously agree as to the victim of the assault did not deprive Petitioner of a fair trial. Only one individual – Jashmir Pal – was named in the information, and the jury did not express any confusion as to Count Ten of the Information.

Nor was the state court's rejection of these claims an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. As discussed *supra*, in light of the evidence presented at the state court proceeding, the state court reasonably determined that

the jury was not confused as to whether Jashmir Pal or someone else was the victim of the assaults. The information specified that Jashmir Pal was the victim, CT 259-65, and was read to the jury, RT 152-53, 155-56; and the verdict form specifically referenced Count Ten of the Information, CT 259 ("We, the jury in this case, find the defendant, TROY CEBRAN SANDERS, JR. _____ (guilty / not guilty) of (ASSAULT WITH FIREARM), a violation of Penal Code Section 245(a)(2), a felony, on or about May 8, 2013, as set forth in Count Ten in the Information.").

Accordingly, the failure to amend the verdict form to list Jashmir Pal as the victim in Count Ten and to instruct the jury that it was required to unanimously agree as to the victim of the assault did not deprive Petitioner of a fair trial. Federal habeas relief is denied as to these claims.

### 2. Claim No. 3: Instructional Error (Cal. Penal Code § 246)

In his third claim for habeas relief, Petitioner argues that he was denied his rights to a fair trial and due process of law when the trial court failed to instruct the jury that to find Petitioner guilty of violating Cal. Penal Code § 246, the jury must find that the vehicle into which Petitioner shot was occupied. ECF No. 1 at 59-62 (unsigned petition); ECF No. 12 at 62-65 (signed petition).

The state appellate court denied these claims as follows:

> ***Discharging a Firearm at an Occupied Motor Vehicle***
>
> The trial court instructed the jury regarding the offense of discharging a firearm at an occupied motor vehicle in relevant part as follows: "The defendant is charged in counts 3, 7 and 11 with shooting at a car in violation of Penal Code section 246. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant willfully and maliciously shot a firearm; [¶] AND [¶] 2. The defendant shot the firearm at a car; [¶] AND [¶] 3. The defendant did not act in self-defense." Defendant argues that the court's instruction omitted the requirement that the motor vehicle be occupied. The Attorney General acknowledges that this element should have been included in the instruction but asserts that the omission was harmless because the evidence that Pal was in the truck, coupled with the jury's verdict on the assault charge, demonstrates that the jury necessarily found that the vehicle was occupied. We agree. Moreover, even the conflicting evidence to which defendant points indicates that someone, even if not Pal, was in the truck when defendant fired at it. [FN 5] Accordingly, the erroneous omission in the instruction was not prejudicial.

14

> FN 5: While defendant's gunfire also hit two other cars parked nearby, there is no likelihood that the jury convicted defendant based on his shooting at a one of the parked cars. All of the evidence and the argument focused on shooting at the truck.

*Sanders*, 2019 WL 2082396, at *3-*4.

### a. Legal Standard

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'"). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *See Estelle*, 502 U.S. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982). The defined category of infractions that violate fundamental fairness is very narrow: "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Estelle*, 502 U.S. at 73.

### b. Analysis

Respondent argues that federal habeas relief should be denied on this claim because the claim is unexhausted and because the error was harmless beyond a reasonable doubt. Because the Court finds that Petitioner is not entitled to habeas relief on the merits of this claim, the Court declines to address the exhaustion argument.

The state court's denial of this claim on the merits did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Nor did the denial result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

The state court reasonably concluded that the jury necessarily found that the vehicle was occupied because there was evidence presented that Jashmir Pal was in the truck and the jury

found Petitioner guilty of assaulting Jashmir Pal on the same day. The testimony was consistent that Petitioner fired at an occupied car. Jashmir Pal testified that, on May 8, 2013, she was driving alone when Petitioner shot at her. She ducked but could hear lots of gunshots and was pretty sure that they hit the vehicle. She put the car in reverse and stepped on the gas, and hit an island on the left hand side, which caused her truck to roll over three times. RT 327, 330-31, 334-35, 344. Petitioner testified that on May 8, 2013, he shot at an occupied car in an attempt to get the occupant of the car to "slow . . . down to let [Petitioner] get fair enough space to get away." RT 913-15. The only difference between Jashmir Pal's testimony and Petitioner's testimony concerned the identity of the car's occupant; the fact of occupancy was not disputed. In addition, the verdict form specified that the charge was for shooting at an occupied motor vehicle. CT 250. Considering the error in light of the trial record as a whole, the state court reasonably concluded that the jury necessarily found that the vehicle was occupied when Petitioner shot at it on May 8, 2013 and that the error was therefore not prejudicial.

Federal habeas relief is denied on this claim.

### C. Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

/ / /

**CONCLUSION**

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED.

The Clerk shall enter judgment in favor of Respondent and close the file.

**IT IS SO ORDERED.**

Dated: February 15, 2024



_____
JON S. TIGAR
United States District Judge

17